## JANE DOE *v.* DORIS MARSELLE ET AL.
### (15312)

Callahan, Borden, Berdon, Norcott and Katz, Js.

Argued March 21—officially released May 7, 1996

*Susan Garten*, with whom, on the brief, was *Ana Mari Bermudez*, for the appellant (plaintiff).

*Andrew J. O'Keefe*, with whom were *Kathryn M. Cunningham* and, on the brief, *Maureen Sullivan Dinnan*, for the appellee (defendant Dionisio C. Flores).

*Ben A. Solnit, Brian O'Donnell* and *Philip D. Tegeler* filed a brief for the Connecticut Civil Liberties Union Foundation et al. as amici curiae.

KATZ, J. The dispositive issue on appeal is whether in order to state a cause of action under General Statutes § 19a-590[1] for a violation of General Statutes § 19a-583 (AIDS statute),[2] the confidentiality provision of chapter

[1] General Statutes § 19a-590 provides: "Liability for violations. Any person, except as otherwise provided in this chapter, who wilfully violates any provision of this chapter shall be liable in a private cause of action for injuries suffered as a result of such violation. Upon a finding that an individual has been injured as a result of such violation, damages shall be assessed in the amount sufficient to compensate said individual for such injury."

[2] General Statutes § 19a-583 provides in relevant part: "Limitations on disclosure of HIV-related information. (a) No person who obtains confidential HIV-related information may disclose or be compelled to disclose such information . . . ."

General Statutes § 19a-581 (8) defines "confidential HIV-related information" as "any information pertaining to the protected individual or obtained pursuant to a release of confidential HIV-related information, concerning whether a person has been counseled regarding HIV infection, has been the subject of an HIV-related test, or has HIV infection, HIV-related illness or AIDS, or information which identifies or reasonably could identify a person

368x, entitled "AIDS Testing and Medical Information," a plaintiff must allege that the person who violated that provision intended to engage in the prohibited conduct and intended to produce the resulting injury. We conclude that a wilful violation of § 19a-583 requires only a knowing disclosure of confidential human immunodeficiency virus (HIV) related information.

The following facts are undisputed. The plaintiff, Jane Doe, was a patient of the defendant Dionisio C. Flores, a surgeon, to whom, during the course of her treatment, she disclosed that she was infected with HIV. A surgical assistant employed by Flores, the named defendant Doris Marselle, after learning of the plaintiff's condition from her medical chart and from personal discussions with the plaintiff, consulted Flores regarding her intention to disclose the plaintiff's HIV status to Marselle's sons who were illegal drug users and who had friends in common with the plaintiff. Flores authorized Marselle to make the disclosures provided that she not identify the plaintiff by name.

When the plaintiff learned that Marselle had told at least three other individuals in the community that she was HIV positive, the plaintiff, who had never authorized the disclosures, brought a multicount complaint against Flores and Marselle alleging that they each had: (1) violated the confidentiality provisions of § 19a-583 by intentionally disclosing her HIV status (first count); (2) violated the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 42-110b;[3] based upon a breach of confidentiality and Flores' false representations to her that her HIV status would be kept confiden-

as having one or more of such conditions, including information pertaining to such individual's partners . . . ."

[3] General Statutes § 42-110b provides in relevant part: "Unfair trade practices prohibited. Legislative intent. (a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

tial (third and fourth counts); and (3) negligently inflicted emotional distress by disclosing her HIV status (sixth count). Additionally, the plaintiff alleged that Flores had been negligent in failing to instruct his employees regarding their obligation to comply with General Statutes § 19a-581 et seq. (second count), and that Marselle had intentionally inflicted emotional distress by wilfully disclosing the confidential medical information (fifth count).

Flores filed an "objection" to the complaint,[4] challenging the sufficiency of the plaintiff's claims against him.[5] Treating the objection as a motion to strike, the trial court ordered all counts against Flores stricken and rendered judgment in his favor.[6] Following the trial court's denial of her motion for articulation, the plaintiff appealed to the Appellate Court. Thereafter, the plaintiff filed a second motion for articulation, which the Appellate Court granted. Pursuant to that order, the trial court set forth its reasons for striking the complaint. As to the first count, the court stated that the plaintiff had failed to state a cause of action under § 19a-590 because the allegations set forth in the pertinent four paragraphs of the first count did not contain the word "wilfully" and there were no allegations of an intent to injure that would allow the court to conclude that Flores' action had been wilful.[7] Additionally, because § 19a-590 autho-

[4] Flores had moved to strike the complaint. By agreement of the parties, the complaint was stricken and the plaintiff thereafter filed an amended complaint that is the subject of this appeal.

[5] The claims against Marselle were not the subject of this "objection." In December, 1995, the action against Marselle was withdrawn leaving Flores, therefore, as the sole remaining defendant.

[6] The reasons provided in the trial court's order were limited: the first count was stricken because there was no allegation of wilfulness; the second and sixth counts were stricken because § 19a-581 et seq. is the exclusive remedy for the alleged conduct; and the third and fourth counts were stricken because CUTPA is not applicable to this case.

[7] The trial court examined the following paragraphs in determining the sufficiency of the allegations: "16. After her conversation with [the plaintiff], Ms. Marselle consulted Dr. Flores concerning her intention to disclose [the

rizes an action only for wilful, as opposed to negligent, conduct and because the plaintiff had not alleged that Flores had intended to injure her when he authorized the disclosure, the trial court granted Flores' motion to strike the second and sixth counts. Finally, the court concluded that in the absence of an allegation of wilful conduct the plaintiff had failed to state a claim under CUTPA and, accordingly, it granted Flores' motion to strike the third and fourth counts.

In her appeal to the Appellate Court, the plaintiff argued that the term "wilful" in § 19a-590 means "intentionally" as opposed to "accidentally" and that the trial court improperly had defined the term to mean intending to injure. *Doe* v. *Marselle*, 38 Conn. App. 360, 366, 660 A.2d 871 (1995). The Appellate Court disagreed, concluding that in order to establish a violation of § 19a-590, the plaintiff must allege that both the action and the resulting injury had been intended. Id., 367–68. In the Appellate Court's view, because the plaintiff had failed to do so, the trial court properly rendered judgment for Flores. Id., 370. Additionally, although it did not decide whether § 19a-581 et seq. is the exclusive

plaintiff's] HIV status to Ms. Marselle's sons, who she knew to be illegal drug users and acquaintances of friends of [the plaintiff].

"17. At no time did Dr. Flores inform the defendant Marselle of the statutory prohibition against releasing any information which would identify [the plaintiff] as HIV positive. In fact, Dr. Flores affirmatively authorized Ms. Marselle's illegal disclosure, with the sole proviso that [the plaintiff's] actual name not be used in identifying her.

"18. In May, 1991, [the plaintiff] learned that the defendant Marselle had intentionally disclosed [the plaintiff's] HIV status to at least three other individuals in the community who knew [the plaintiff]. Ms. Marselle never asked for or received [the plaintiff's] permission to make these disclosures.

"19. When [the plaintiff] confronted the defendant Marselle about her unauthorized disclosures, Ms. Marselle admitted telling other persons about [the plaintiff's] HIV status. She also told [the plaintiff] that she had obtained Dr. Flores' permission to make the disclosures."

In her first complaint, which the plaintiff agreed to have stricken, she had alleged that Marselle had received Flores' permission to make the disclosures but had not alleged that Flores had authorized those disclosures.

remedy for an unauthorized disclosure of confidential HIV-related information, the Appellate Court affirmed the trial court's judgment as to the remaining counts. Id., 370–71. Relying on the fact that the plaintiff had incorporated the first count into each of the other counts against Flores, the court reasoned that because the first count had failed to state a cause of action upon which relief could be granted, the counts into which the same allegations had been incorporated must similarly fail. Id., 371.

Thereafter, the plaintiff petitioned this court for certification. We granted certification limited to the following questions: (1) "Did the Appellate Court correctly conclude that the second amended complaint did not allege a wilful violation of General Statutes § 19a-583 (a)?"; and (2) "Did the Appellate Court properly decide that the plaintiff's negligence, negligent infliction of emotional distress and Connecticut Unfair Trade Practices Act (CUTPA) counts had been properly stricken?" *Doe* v. *Marselle*, 235 Conn. 915, 665 A.2d 606 (1995). Because we answer both certified questions in the negative, we reverse.

"Because our fundamental objective in construing a statute is to ascertain and give effect to the apparent intent of the legislature; *Fleming* v. *Garnett*, 231 Conn. 77, 91–92, 646 A.2d 1308 (1994); *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994); we will not undertake an examination of [§ 19a-590] with blinders on regarding what the legislature intended [it] to mean. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). Accordingly, our analysis of [§ 19a-590] is not limited solely to the words of the statute. Instead, we must also look . . . to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. *State* v. *Metz*,

supra, 409; *Fleming* v. *Garnett,* supra, 92." (Internal quotation marks omitted.) *Derwin* v. *State Employees Retirement Commission,* 234 Conn. 411, 420, 661 A.2d 1025 (1995); accord *Covelli* v. *Commissioner of Revenue Services,* 235 Conn. 539, 555, 668 A.2d 699 (1995) (*Katz, J.,* dissenting).

A thorough examination using all these factors is especially important in the present case because, although "our initial guide [to interpreting a statute] is the language of the statute itself"; *HUD/Barbour-Waverly* v. *Wilson,* 235 Conn. 650, 656, 668 A.2d 1309 (1995); the particular term in issue is a word of many meanings. "Wilful" has been defined many ways, and the applicable definition often turns on the specific facts of the case and the context in which it is used.[8] *Screws* v. *United States,* 325 U.S. 91, 101, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945). Consequently, in construing its meaning, we are guided by the language of § 19a-590, both alone and in the context of the AIDS statute, as well as the underlying legislative purpose of the harm at which it is directed. We pay particular attention to "the societal [problem] which the legislature sought to address . . . in determining the true meaning of the statute." *State* v. *Parmalee,* 197 Conn. 158, 161–62, 496 A.2d 186 (1985).

---

[8] Black's Law Dictionary (6th Ed. 1990) demonstrates the varied ways that wilful has been defined ranging from "voluntary; knowingly; deliberate . . . [i]ntending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary" to "[p]remeditated; malicious; done with evil intent, or with a bad motive or purpose, or with indifference to the natural consequences."

Additionally, we have defined the term differently depending on the context. See, e.g., *Dubay* v. *Irish,* 207 Conn. 518, 533, 542 A.2d 711 (1988) (wilful misconduct requires design to injure); *DeMilo* v. *West Haven,* 189 Conn. 671, 678–79, 458 A.2d 362 (1983) (wilful destruction of bridge means intentional destruction of bridge and intent to cause injury); *State* v. *Gotsch,* 23 Conn. Sup. 395, 398–99, 184 A.2d 56 (1962) (wilful commonly means intentional, as opposed to accidental, but in penal statute it means with evil intent); *Guest* v. *Administrator,* 22 Conn. Sup. 458, 459, 174 A.2d 545 (1961) (wilful

The AIDS statute was designed and intended to combat the AIDS epidemic, beginning with protecting confidentiality. The legislation imposes certain requirements on the testing and treatment of persons who may be HIV positive or who have AIDS. These requirements relate principally to the areas of informed consent for HIV testing and confidential treatment of HIV-related information, and are aimed at helping health care providers to identify those people with the disease, to treat them and to educate them in an attempt to put an end to the epidemic in our state, which, at the time this legislation was under consideration, had the ninth highest number of AIDS cases per capita in the nation and the highest percentage of AIDS cases in children. 32 H.R. Proc., Pt. 31, 1989 Sess., pp. 10,776–77. As one of the bill's sponsors, Representative Benjamin N. DeZinno, Jr., explained,[9] the bill was intended to "protect the confidentiality of data related to AIDS, requires informed consent for tests for the AIDS virus, and allows for notification of partners of those that are so infected." Id., p. 10,775. He explained that in order to "wipe out or hope to wipe [out] this horrible epidemic disease in our lifetime . . . [w]e have to start with protecting the confidentiality . . . [b]ecause people will not step forward for testing and treatment of AIDS unless they know that a positive result will not become public information. I think that's very important. Now unfortunately, there is widespread discrimination against the AIDS victim, and many people would rather [forgo] treatment, than risk being stigmatized."[10] Id., p. 10,776.

---

breach of rule means deliberate violation done purposely with knowledge as opposed to result of thoughtlessness or inadvertence).

[9] We pay particular attention to statements of the legislators who sponsored the bill. *Manchester Sand & Gravel Co.* v. *South Windsor*, 203 Conn. 267, 275, 524 A.2d 621 (1987).

[10] Studies in the medical literature indicate that fear of discrimination discourages people from seeking appropriate care. See K. Siegel, M. Levine, C. Brooks & R. Kern, "The Motives of Gay Men for Taking or Not Taking

Beth Weinstein, chief of the AIDS section for the then department of health services, now the department of public health and addiction services (department), along with James Hadler, a physician and the chief of the epidemiology section of the department, testified that the department had proposed "this critical legislation . . . [to] provide us with the tools to continue fighting the AIDS epidemic in Connecticut. If passed, it will protect the confidentiality of AIDS information and will require informed consent for the test for the virus which causes AIDS. . . . The AIDS epidemic has magnified many problems in the existing health care system. Among the most glaring is the lack of protection [in] current Connecticut statutes for informed consent and disclosure of information. Although this problem goes beyond AIDS, we feel it is most important to solve it for AIDS because of the sensitivities regarding the disease." Conn. Joint Standing Committee Hearings, Public Health, Pt. 3, 1989 Sess., p. 766. Weinstein explained how this legislation was necessary to encourage confidential testing and to allow medical providers to provide proper follow-up treatment. "In most of the sites that the department funds for counseling and testing for the AIDS virus, anonymous testing is done, largely because we don't have confidentiality protection. However, anonymous testing has limitations. Counselors have no ability to follow-up with clients to provide support for behavior change, additional counseling, public health services, social services or medical assistance. Voluntary testing in which the identity of the

the HIV Antibody Test," 36 Social Problems 368, 378–79 (1989) (people avoid HIV testing in part because they fear discrimination if their illness or sexual behavior become known); R. Weitz, "Anonymity in Testing for HIV Antibodies Desired Option," 81 Am. J. Pub. Health 1213 (1991) (fear of discrimination based on illness or on having been tested). As one recent nationwide study found, people are more likely to undergo HIV testing if they believe that their test results will remain private. K. Phillips, "The Relationship of 1988 State HIV Testing Policies to Previous and Planned Voluntary Use of HIV Testing," 7 J. Acquired Immune Deficiency Syndromes 403, 405 (1994).

person tested [is] known will only be widely accepted if there is specific protection in the statutes." Id., p. 767. Weinstein concluded her testimony by emphasizing that confidentiality is essential "to protect people from the discrimination that often comes with the knowledge that a person has AIDS or HIV infection" and to help eliminate the stigma that often accompanies AIDS. Id., pp. 768–69.

In order to accomplish the aforementioned goals, disclosure of confidential HIV-related information is prohibited except in very limited and discrete circumstances. General Statutes § 19a-583 (a) (1) through (12).[11] Even health care providers or persons who

[11] General Statutes § 19a-583 provides in relevant part: "Limitations on disclosure of HIV-related information. (a) No person who obtains confidential HIV-related information may disclose or be compelled to disclose such information, except to the following:

"(1) The protected individual, his legal guardian or a person authorized to consent to health care for such individual;

"(2) Any person who secures a release of confidential HIV-related information;

"(3) A federal, state or local health officer when such disclosure is mandated or authorized by federal or state law;

"(4) A health care provider or health facility when knowledge of the HIV-related information is necessary to provide appropriate care or treatment to the protected individual or a child of the individual or when confidential HIV-related information is already recorded in a medical chart or record and a health care provider has access to such record for the purpose of providing medical care to the protected individual;

"(5) A medical examiner to assist in determining the cause or circumstances of death;

"(6) Health facility staff committees or accreditation or oversight review organizations which are conducting program monitoring, program evaluation or service reviews;

"(7) A health care provider or other person in cases where such provider or person in the course of his occupational duties has had a significant exposure to HIV infection, provided the following criteria are met: (A) The worker is able to document significant exposure during performance of his occupation, (B) the worker completes an incident report within forty-eight hours of exposure, identifying the parties to the exposure, witnesses, time, place and nature of the event, (C) the worker submits to a baseline HIV test within seventy-two hours of the exposure and is negative on that test for the presence of the AIDS virus, (D) the patient's or person's physician

engage in occupational therapy who have had significant exposure to HIV infection are not entitled to this information unless they satisfy the rigid criteria listed in § 19a-583 (a) (7). See footnote 11. Similarly, employees of mental health hospitals operated by the depart-

---

or, if the patient or person does not have a personal physician or if the patient's or person's physician is unavailable, another physician or health care provider has approached the patient or person and sought voluntary consent to disclosure and the patient or person refuses to consent to disclosure, except in an exposure where the patient or person is deceased, (E) the worker would be able to take meaningful immediate action as defined in regulations adopted pursuant to section 19a-589 which could not otherwise be taken, (F) an exposure evaluation group determines that the criteria specified in subparagraphs (A), (B), (C), (D) and (E) of this subdivision are met and that a worker has a significant exposure to the blood of a patient or person and the patient or person or the patient's or person's legal guardian refuses to consent to release of the information. No member of the exposure evaluation group who determines that a worker has sustained a significant exposure and authorizes the disclosure of confidential HIV-related information nor the health facility, correctional facility or other institution nor any person in a health facility, correctional facility or other institution who relies in good faith on the group's determination and discloses the result shall have any liability as a result of his action carried out under this section, unless such persons acted in bad faith. If the information is not held by a health facility, correctional facility or other institution, a physician not directly involved in the exposure has certified in writing that the criteria specified in subparagraphs (A), (B), (C), (D) and (E) of this subdivision are met and that a significant exposure has occurred;

"(8) Employees of hospitals for mental illness operated by the department of mental health if the infection control committee of the hospital determines that the behavior of the patient poses a significant risk of transmission to another patient of the hospital. Disclosure shall only be allowed if it is likely to prevent or reduce the risk of transmission and no reasonable alternatives exist that will achieve the same goal and also preserve the confidentiality of the information. Such 'reasonable alternatives' include counseling the patient concerning behaviors that pose a risk of transmission and other efforts to prevent or address the behaviors that pose a significant risk of transmission without disclosing the patient's HIV status or other confidential HIV-related information. Disclosure shall be limited to as few employees as possible and only to those employees with a direct need to receive the information to achieve the purpose authorized by this subdivision;

"(9) Employees of facilities operated by the department of correction to provide services related to HIV infection or if the medical director and chief administrator of the facility determine that the behavior of an inmate poses significant risk of transmission to another inmate or has resulted in a signifi-

ment of mental health and correctional facilities operated by the department of correction are not entitled to this information even when the patient or inmate poses a significant risk of transmission unless the infection control committee of the hospital or the medical director and chief administrator of the correctional facility first determine that such disclosure is likely to prevent or reduce the risk of transmission and that no reasonable alternatives exist that will achieve the same goal and preserve the confidentiality of the information. See General Statutes § 19a-583 (a) (8) and (9).

A person who does not fall within these exceptions may petition the court for disclosure; however, a court order may be issued only when the moving party demonstrates a clear and imminent danger to the health of another or the public health and further demonstrates

cant exposure of another inmate of the facility. Such a disclosure shall only be made if it is specifically required to enable the inmate to receive such services or is likely to prevent or reduce the risk of transmission and no reasonable alternatives exist that will achieve the same goal and also preserve the confidentiality of the information. Such 'reasonable alternatives' include counseling the inmate concerning behaviors that pose a risk of transmission or other efforts to prevent or address the behaviors that pose a significant risk of transmission without disclosing the patient's HIV status or other confidential HIV-related information. Disclosure shall be limited to as few employees as possible and only to those employees with a direct need to receive the information to achieve a purpose authorized by this subdivision . . .

"(11) Life and health insurers, government payers and health care centers and their affiliates, reinsurers, and contractors, except agents and brokers, in connection with underwriting and claim activity for life, health, and disability benefits; and

"(12) Any health care provider specifically designated by the protected individual to receive such information received by a life or health insurer or health care center pursuant to an application for life, health or disability insurance.

"(b) No person, except the protected individual, his legal guardian or a person authorized to consent to health care for such individual, to whom confidential HIV-related information is disclosed may further disclose such information, except as provided in this section and sections 19a-584 and 19a-585."

a compelling need for the test results that cannot be accommodated by other means. In assessing compelling need, the court must weigh, among other things, the need for disclosure against the privacy interest of the test subject and the public interest that may be disserved by disclosure that deters future testing or that may lead to discrimination. See General Statutes § 19a-583 (a) (10).[12] Finally, even when disclosure is authorized, the AIDS statute strictly limits the terms of that disclosure. See General Statutes § 19a-585.[13] In

[12] General Statutes § 19a-583 (a) provides in relevant part: "No person who obtains confidential HIV-related information may disclose or be compelled to disclose such information, except to the following . . .

"(10) Any person allowed access to such information by a court order which is issued in compliance with the following provisions: (A) No court of this state shall issue such order unless the court finds a clear and imminent danger to the public health or the health of a person and that the person has demonstrated a compelling need for the test results which cannot be accommodated by other means. In assessing compelling need, the court shall weigh the need for disclosure against the privacy interest of the test subject and the public interest which may be disserved by disclosure which deters future testing or which may lead to discrimination. (B) Pleadings pertaining to disclosure of confidential HIV-related information shall substitute a pseudonym for the true name of the subject of the test. The disclosure to the parties of the subject's true name shall be communicated confidentially, in documents not filed with the court. (C) Before granting any such order, the court shall provide the individual whose test result is in question with notice and a reasonable opportunity to participate in the proceedings if he is not already a party. (D) Court proceedings as to disclosure of confidential HIV-related information shall be conducted in camera unless the subject of the test agrees to a hearing in open court or unless the court determines that a public hearing is necessary to the public interest and the proper administration of justice. (E) Upon the issuance of an order to disclose test results, the court shall impose appropriate safeguards against unauthorized disclosure, which shall specify the persons who may have access to the information, the purposes for which the information shall be used, and appropriate prohibitions on future disclosure . . . ."

[13] General Statutes § 19a-585 provides in relevant part: "Requirements for disclosure of HIV-related information. (a) Whenever confidential HIV-related information is disclosed it shall be accompanied by a statement in writing, whenever possible, which includes the following or substantially similar language: 'This information has been disclosed to you from records whose confidentiality is protected by state law. State law prohibits you from making any further disclosure of it without the specific written consent of the person

short, the drafters of this legislation "crafted the bill very carefully to give protection while also enabling those who care for people with AIDS and HIV infection to have access to information needed for the patient's care."[14] Conn. Joint Standing Committee Hearings, Public Health, Pt. 3, 1989 Sess., p. 767.

Keeping this legislative history in mind, coupled with the elaborate statutory safeguards imposed against disclosure of HIV-related information, it is difficult to presume a definition of wilful that would make permissible the unauthorized disclosure of a person's HIV-related

to whom it pertains, or as otherwise permitted by said law. A general authorization for the release of medical or other information is NOT sufficient for this purpose.' An oral disclosure shall be accompanied or followed by such a notice within ten days.

"(b) Except for disclosures made to a federal, state, or local health officer when such disclosure is mandated or authorized by federal or state law or to persons reviewing information or records in the ordinary course of ensuring that a health facility is in compliance with applicable quality of care standards or any other authorized program evaluation, program monitoring or service review, a notation of all such disclosures shall be placed in the medical record or with any record of an HIV-related test result of a protected individual, who shall be informed of such disclosures upon request; provided for disclosures made to governmental agents requiring information necessary for payments to be made on behalf of patients or clients pursuant to contract or law, such notation need only be entered at the time the disclosure is first made."

[14] The legislature's concern for discrimination against people with AIDS is well founded. In a 1993 poll, 35.7 percent of the respondents said they were "afraid" of people with AIDS, 27.7 percent were "disgusted" and 27.1 percent were "angry." G. Herek & J. Capitanio, "Public Reactions to AIDS in the United States: A Second Decade of Stigma," 83 Am. J. Pub. Health 574, 575 (1993). More than one in five Americans (20.4 percent) would avoid an office job if they had to work with a man with AIDS, and nearly one half (47.1 percent) would avoid a neighborhood grocery store if the owner had AIDS. Id. Feelings of hostility translate into acts of discrimination against people infected with HIV. In lawsuits across the country, people have alleged discrimination based on HIV status in housing, employment and access to public accommodations, as well as in education and health care. See L. Gostin, Jr., "A National Review of Court and Human Rights Commission Decisions, Part II: Discrimination," 263 J. Am. Med. Assn. 2086 (1990) (listing nearly 150 lawsuits and other complaints stemming from such alleged discrimination).

information except in the extreme situation where the person disclosing the information actually intends to injure the protected individual. We have noted that as part of its attempt to foster an increase in medical treatment for people with AIDS and HIV infection, the legislature created the AIDS statute to correct the problems, such as the lack of confidentiality, that have stood in the way of this goal. A definition of wilful that would require a plaintiff to prove that confidentiality was breached with the intent to cause injury would do nothing to advance the laudable goals of the legislation's sponsors. Indeed, were we to apply the definition of wilful proposed by Flores and adopted by the Appellate Court, a patient who is HIV positive, knowing that he or she could obtain redress for a violation of the confidentiality provisions in only the most egregious circumstances, would have no confidence that his or her status or test results would be zealously protected. This lack of confidence, in turn, would create a disincentive for that person to submit to testing. Additionally, because General Statutes § 19a-582 (b) (4) requires that pretest counseling include "an explanation of the confidentiality protections afforded confidential HIV-related information, including the circumstances under which and classes of persons to whom disclosure of such information may be required, authorized or permitted by law," the lack of protection resulting from a definition of wilful that requires an evil intent would be more likely to eviscerate the purpose of the statute and consequently undermine the public health strategy against AIDS that prompted the legislation. It is not our practice to construe a statute in a way to thwart its purpose or lead to absurd results; *Sutton* v. *Lopes*, 201 Conn. 115, 121, 513 A.2d 139, cert. denied, 479 U.S. 964, 107 S. Ct. 466, 93 L. Ed. 2d 410 (1986); or in a way "that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." *Fairfield*

*Plumbing & Heating Supply Corp.* v. *Kosa*, 220 Conn. 643, 651, 600 A.2d 1 (1991). Consequently, we cannot endorse a definition of wilful that would allow virtually any disclosure of confidential HIV-related information.

Moreover, to limit the definition of wilful to the case of a medical provider who intended to cause the patient injury, as Flores argues, would be to provide a cure for which there is no disease. No one speaking on behalf of the legislation identified a problem with medical providers seeking to sabotage the ability of their AIDS patients to obtain good medical care. Nor has Flores argued that such a problem exists. Because we do not presume that the legislature enacted legislation that was devoid of purpose; *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 542, 494 A.2d 555 (1985); we will not interpret wilful as Flores has proposed.

Rather, we interpret wilful to mean a knowing disclosure of confidential HIV-related information. Contrary to the Appellate Court's assertion, this interpretation does not render the term superfluous. Had the term wilful not been used, persons would be liable for inadvertent disclosures or nonvolitional acts. By establishing liability only for wilful violations, the legislature indicated that inadvertent violations would not be actionable.[15]

---

[15] Our interpretation of wilful is consistent with the construction of similar language contained in other statutes whose wilful violation has been held to involve nothing more than the knowing commission of the acts they proscribe, without regard to recklessness, intent to injure or other improper motive. It is noteworthy that some of these statutes, like the AIDS statute, were designed to promote the public health and safety. See, e.g., *A. Schonbek & Co.* v. *Donovan*, 646 F.2d 799, 800 (2d Cir. 1981) (wilful violation of rules promulgated under Occupational Safety and Health Act requires intentional disregard of, or plain indifference to, legal requirement); *Duffy* v. *Poulos Bros. Construction Co.*, 225 Ill. App. 3d 38, 46, 587 N.E.2d 1038 (1991) (wilful violation of Illinois Structural Work Act where defendant knew or should have known of dangerous condition).

Confirmation of our decision can be found by returning to the language of § 19a-590 itself, which the plaintiff suggests we compare with § 19a-591b, which was included in the 1991 amendments to the AIDS statute and which provides that manufacturers of an AIDS vaccine shall be liable to research subjects for civil damages for any injury that was caused by "gross negligence or reckless, wilful or wanton misconduct." As used in this context, wilful is similar to the concept of intentional injury adopted by the Appellate Court in this case. Section 19a-590 is, however, devoid of any suggestion of recklessness, wantonness, misconduct or other improper motive. The plaintiff argues, therefore, that it is more logical to construe wilful to apply simply to a knowing violation of the statute's nondisclosure requirements. We agree. As we have stated many times, "[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them." (Citations omitted; internal quotation marks omitted.) *In re Ralph M.*, 211 Conn. 289, 306–307, 559 A.2d 179 (1989); see also *Plourde* v. *Liburdi*, 207 Conn. 412, 416, 540 A.2d 1054 (1988) (" '[t]he use of different words [or the absence of repeatedly used words in the context of] the same [subject matter] must indicate a difference in legislative intention' "). Had the legislature intended more than a knowing violation of the statute's nondisclosure requirements, it would have used the language of § 19a-591b.

Finally, Flores argues that even if wilful means knowing, the allegations do not state a cause of action under

§ 19a-590 against him. We disagree. The complaint alleges that Flores "affirmatively authorized" the disclosure with the sole proviso that Marselle not disclose the plaintiff's actual name. That disclosure clearly falls within the definition of "confidential HIV-related information" set forth in § 19a-581 (8). See footnote 2. Moreover, Marselle was the "employee and agent" at all times relevant to the complaint. Flores' assertion that the plaintiff must specifically allege her reliance on the doctrine of respondeat superior ignores what we have often stated is our "responsibility to construe the complaint in the manner most favorable to sustaining its legal sufficiency."[16] (Internal quotation marks omitted.) *Mahoney* v. *Lensink*, 213 Conn. 548, 567–68, 569 A.2d 518 (1990).

Flores concedes that the trial court's decision striking the remaining four counts against him can be affirmed only if we define a wilful disclosure of HIV-related information as requiring an intent to engage in the prohibited conduct and an intent to produce the resulting injury. Because we have defined a wilful violation of § 19a-590 as solely a knowing violation, however, we reverse the judgment of the trial court as to all counts against Flores.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

---

[16] Whether Marselle was indeed acting within the scope of her employment and whether Flores knew that Marselle's disclosure "reasonably could" allow those in receipt of the information to identify the plaintiff are questions that must be determined by a fact finder.