MARK A. SHIFFRIN, COMMISSIONER OF CONSUMER PROTECTION *v.* I.V. SERVICES OF AMERICA, INC.
(AC 17390)

Schaller, Sullivan and Kulawiz, Js.

---

Argued December 10, 1998—officially released May 4, 1999

*Francis A. Miniter*, for the appellant (defendant).

*Roger F. Reynolds*, assistant attorney general, with whom were *Gary Hawes*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellant (plaintiff).

SCHALLER, J. The plaintiff, Mark A. Shiffrin, the commissioner of consumer protection (commissioner), served an investigative demand on the defendant I.V. Services of America, Inc., pursuant to General Statutes § 42-110d (c).[1] The defendant appeals from an order of the trial court denying its motion for a protective order in response to the investigative demand.

The defendant claims that the trial court improperly denied its motion for a protective order because it (1) did not apply properly the pharmacist-customer privilege of General Statutes § 20-626, (2) failed to protect

---

[1] General Statutes § 42-110d provides in relevant part: "(a) For the purposes of this chapter the commissioner shall have the power to order an investigation and examination to be made. In addition to other powers conferred upon the commissioner by this chapter, the commissioner or his authorized representatives may issue subpoenas to any person involved in any matter under investigation and examination, administer an oath or affirmation to any person, and conduct hearings in aid of any investigation or examination, provided none of the powers conferred by this chapter shall be used for the purpose of compelling any natural person to furnish testimony or evidence which might tend to incriminate him or subject him to a penalty or forfeiture.

"(b) Said commissioner or his authorized representatives shall have the right to . . . (4) subpoena documentary material relating to such investigation; and (5) have access to, for the purpose of examination, documentary material and the right to copy such documentary material of any person being investigated or proceeded against. The commissioner or his authorized representatives shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary material relating to any matter under investigation.

"(c) In addition to other powers conferred upon the commissioner, said commissioner may execute in writing and cause to be served by certified mail an investigative demand upon any person suspected of using, having used or about to use any method, act or practice declared by section 42-110b to be unlawful or upon any person from whom said commissioner wants assurance that section 42-110b has not, is not or will not be violated. Such investigative demand shall contain a description of the method, act or practice under investigation, provide a reasonable time for compliance, and require such person to furnish under oath or otherwise, as may be specified in said demand, a report in writing setting forth relevant facts or circumstances together with documentary material. . . ."

the privacy rights of AIDS and HIV positive patients as required by General Statutes § 19a-583 and *Doe* v. *Marselle*, 236 Conn. 845, 675 A.2d 835 (1996), and (3) violated the defendant's due process rights under the federal and state constitutions.[2] We affirm the order of the trial court.

On August 28, 1996, the commissioner, pursuant to § 42-110d (c), served an investigative demand on the defendant, a pharmacy in the state of Connecticut. The demand was issued in connection with an investigation into allegations that the defendant had violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et. seq., by billing consumers for medical equipment and services after representing to them that their insurance companies would be billed and by unfairly and deceptively inflating prices on prescription medications.

The demand required, inter alia, that the defendant produce the identity of its customers and the billing records of customers from whom the defendant had attempted to collect money. The defendant answered some of the commissioner's interrogatories, but refused to answer interrogatories seven and eight and document

---

[2] The defendant argues in its brief that the trial court's denial of its motion for protective order is a final judgment from which it can properly appeal. The commissioner does not contest that there is a final judgment. "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). We conclude that the order requiring the defendant to comply with the agency's demand terminated an independent proceeding to obtain information and, therefore, is an appealable final judgment. See *Berger* v. *Cuomo*, 230 Conn. 1, 644 A.2d 333 (1994); see also *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 461 A.2d 938 (1983) (Supreme Court reviewed commissioner's appeal taken from trial court's dismissal of petition requiring defendant to comply with investigative demand pursuant to § 42-110d).

request two.[3] The commissioner subsequently filed a motion for an order requiring compliance. The defendant then filed a motion for a protective order. The trial court heard oral argument on the motions and allowed the parties to submit supplemental briefs. The trial court denied the defendant's motion and issued the following order: "I.V. Services of America, Inc., shall comply with and provide answers to Interrogatories 7 and 8 of the Civil Investigative Demand issued by [the commissioner] . . . pursuant to the confidentiality agreement drafted by [the commissioner] and appended to its second supplemental memorandum dated March 17, 1997.

"However, should any documents [the defendant] is required to disclose pursuant to Request for Production Number 2 contain specific references to a person's physical or mental condition, such references may be redacted prior to such documents being produced." This appeal followed.

I

The defendant first claims that it was not required to disclose the information requested in the civil investi-

---

[3] Interrogatory seven states: "For the period January 1, 1990 through the date of your response to the interrogatory, provide a listing of names and addresses of all customers to whom you have sold any products or services. Your answer should include each customer's name, last known address and last known telephone number."

Interrogatory eight states: "For the period January 1, 1990 through the date of your response to this interrogatory, provide a listing of each of your accounts where you have sought to collect any amount of money directly from a customer, as opposed to accounts where you sought to collect money exclusively from the customer's insurance company. Your answer should include the name of the customer, the amount billed to the customer, the last known address of the customer and the last known telephone number of the customer."

Document request two states: "Please provide any documents relating to the billing of any of your accounts where you have sought to collect any amount of money directly from a customer, as opposed to accounts where you sought to collect money exclusively from the customer's insurance company."

gative demand because (1) it was privileged information under General Statutes § 20-626 (a) and (2) the commissioner was not entitled to the information under the exceptions found in § 20-626 (b).[4]

A

The defendant claims first that § 20-626 (a), which provides in relevant part that "[n]o pharmacist . . . shall reveal any records or information," bars the commissioner from obtaining the information requested under the demand. We disagree.

We first note that there is no general pharmacist-customer privilege recognized in Connecticut. The only privilege is that provided for by § 20-626 (a), which is limited to "records or information concerning the *nature of pharmaceutical services rendered* . . . ." (Emphasis added.) Determining whether the requested information falls within the protections of a statute is a matter of statutory construction, which presents a question of law requiring plenary review. *Lopiano* v. *Lopiano*, 247 Conn. 356, 363, 752 A.2d 1000 (1998). "A primary rule of statutory construction is that when the words of a statute are plain and unambiguous they should be given full effect. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987)." *State* v. *Jones*, 51 Conn. App. 126, 137, 721

---

[4] General Statutes § 20-626 provides in relevant part: "(a) No pharmacist or pharmacy shall reveal any records or information concerning the nature of pharmaceutical services rendered to a patient without the oral or written consent of the patient or the patient's agent. If a patient or a patient's agent gives oral consent to release records or information, the pharmacist shall promptly record, in writing or in electronic data base form, the oral consent by listing the patient's name, the name of the patient's agent, if applicable, the date and the nature of the records or information released.

"(b) Notwithstanding subsection (a) of this section, a pharmacist or pharmacy may provide pharmacy records or information to the following . . . (5) *any governmental agency with statutory authority to review or obtain such information*; (6) *any individual, the state or federal government or any agency thereof or court pursuant to a subpoena* . . . ." (Emphasis added.)

A.2d 903 (1998), cert. denied, 247 Conn. 958, 723 A.2d 814 (1999).

The plain language of § 20-626 reveals that the legislature intended to protect information concerning the nature of a customer's treatment, i.e., what symptoms certain drugs were meant to combat, what drugs were prescribed, how often drugs were prescribed and by which physician. There is no indication from the unambiguous language that the billing practices of the defendant fall within the penumbra of the phrase "the nature of pharmaceutical services rendered."

The commissioner clearly sought to avoid infringing on any customers' confidentiality. Rather, the commissioner sought only the information relating to the defendant's alleged unfair or deceptive trade practices. Furthermore, the trial court allowed the defendant to redact any information that might disclose a customer's physical or mental condition. We are not persuaded that the information sought in the investigative demand is protected under § 20-626.

B

Even if we assume that the information requested was protected by § 20-626 (a), the defendant claims that the commissioner is not entitled to the information requested in the demand pursuant to the exceptions in § 20-626 (b). The defendant claims that (1) § 20-626 (b) is permissive and not mandatory and (2) the commissioner is not entitled to the requested discovery because the commissioner is not a "governmental agency with statutory authority to review or obtain such information" under § 20-626 (b) (5) and the commissioner's civil investigative demand is not equivalent to a subpoena. We disagree with the defendant's interpretation.

1

The defendant claims that, because § 20-626 (b) provides that "a pharmacist or pharmacy *may* provide

pharmacy records or information" (emphasis added), it is not required to comply with the commissioner's investigative demand. We disagree.

This issue also involves statutory construction warranting plenary review. *Lopiano* v. *Lopiano*, supra, 247 Conn. 363. "[Our Supreme Court has] consistently held that 'may' is directory rather than mandatory. . . . The word 'may,' unless the context in which it is employed requires otherwise, ordinarily does not connote a command. Rather, the word generally imports permissive conduct and the conferral of discretion." (Citation omitted.) *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 349, 680 A.2d 1261 (1996). While the legislature used both "shall" and "may" in the same section, connoting that it was aware of the different meanings given the two words, the defendant's interpretation cannot be adopted. The defendant's argument fails to consider that § 20-626 (b) (6) permits a pharmacy to disclose information when such information is sought pursuant to a subpoena. "A subpoena is a method for compelling the attendance of a witness [or documents] . . . ." *Commissioner of Welfare* v. *Rynecki*, 37 Conn. Sup. 560, 565, 426 A.2d 1329 (1980). When refusing to answer a subpoena, a witness or party can be subjected to judicial sanctions. It is unlikely that the legislature would have used the terms may and subpoena in § 20-626 (b) to give a party faced with a subpoena the option of not answering it.

The legislature's enactment of subsection (b) shows that it never intended the privilege of subsection (a) to be absolute. Subsection (b) clearly shows that the legislature envisioned situations where the disclosure of pharmaceutical information would be permitted. The purpose of the word may appears to be to protect a pharmacy from civil liability when it does disclose confidential information in those excepted circumstances of § 20-626 (b). We cannot accept the defendant's view

that, because the legislature used the word shall in subsection (a) to mandate nondisclosure of certain information and the word may in subsection (b) to allow disclosure in certain limited situations, the defendant need not disclose in those situations if it feels so inclined.

2

The defendant claims next that the commissioner of consumer protection is not a "governmental agency with statutory authority to review or obtain such information" under § 20-626 (b) (5). The defendant's claim is without merit.

Section 42-110d provides the authority for the commissioner to review the defendant's records if the commissioner suspects that the defendant is utilizing an unfair or deceptive trade practice. At oral argument, the defendant attempted to distinguish the commissioner from the commission of pharmacy. The defendant's claim that the commissioner of consumer protection is not responsible for the regulation of pharmacies lacks merit.

Our review of chapter 400j of the General Statutes, the pharmacy statutes, clearly shows that the legislature intended both agencies to regulate the pharmaceutical industry in this state. In fact, "[t]he Commissioner of Consumer Protection shall exercise general supervision over the operations of the Commission of Pharmacy pursuant to sections 20-570 to 20-625, inclusive." General Statutes § 20-574. The commissioner has the statutory authority to review the defendant's billing records.

3

The defendant next claims that the commissioner's issuance of a civil investigative demand is not equivalent to the issuance of a subpoena under § 20-626 (b) (6). We disagree.

The defendant's position is contrary to the statutory language of CUTPA. "It is the intention of the legislature that this chapter be remedial and be so construed." General Statutes § 42-110b (d). "[B]ecause CUTPA is a self-avowed 'remedial' measure . . . it is construed liberally in an effort to effectuate its public policy goals." (Citation omitted; internal quotation marks omitted.) *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, 230 Conn. 148, 158, 645 A.2d 505 (1994).

General Statutes § 42-110k uses the disjunctive "or" when discussing subpoenas and investigative demands and the commissioner's enforcement powers. The use of "or" by the legislature clearly indicates that the commissioner has a choice of discovery tools available to him. Because CUTPA must be given a liberal interpretation, the fact that the commissioner issues an investigative demand instead of a subpoena cannot be held against him. Accordingly, we conclude that the trial court correctly held that the investigative demand was adequate under § 20-626 (b) (6). Therefore, assuming that the information requested by the commissioner is protected by § 20-626, we conclude that the commissioner has the right to review the defendant's billing records under either subdivision (5) or (6) of § 20-626 (b).

## II

The defendant next claims that the privacy rights accorded to patients, specifically those who are HIV positive and those who have AIDS, would be violated by disclosing the information requested in the investigative demand. We disagree.

General Statutes § 19a-583 (a) provides in relevant part: "No person who obtains confidential HIV-related information may disclose or be compelled to disclose

such information  . . . ." Our Supreme Court thoroughly discussed the policy behind the AIDS nondisclosure statute in *Doe* v. *Marselle*, supra, 236 Conn. 845.

"The AIDS statute was designed and intended to combat the AIDS epidemic, beginning with protecting confidentiality.   . . .   As one of the bill's sponsors, Representative Benjamin N. DeZinno, Jr., explained, the bill was intended to 'protect the confidentiality of data related to AIDS . . . .' He explained that in order to 'wipe out or hope to wipe [out] this horrible epidemic disease in our lifetime . . . [w]e have to start with protecting the confidentiality . . . [b]ecause people will not step forward for testing and treatment of AIDS unless they know that a positive result will not become public information. I think that's very important. Now, unfortunately, there is widespread discrimination against the AIDS victim, and many people would rather [forgo] treatment, than risk being stigmatized.' " (Citations omitted.) Id., 852. "[T]he drafters of this legislation 'crafted the bill very carefully to give protection while also enabling those who care for people with AIDS and HIV infection to have access to information needed for the patient's care.' Conn. Joint Standing Committee Hearings, Public Health, Pt. 3, 1989 Sess., p. 767." *Doe* v. *Marselle*, supra, 236 Conn. 858.

"The legislature's concern for discrimination against people with AIDS is well founded. In a 1993 poll, 35.7 percent of the respondents said they were 'afraid' of people with AIDS, 27.7 percent were 'disgusted' and 27.1 percent were 'angry.' . . . More than one in five Americans . . . would avoid an office job if they had to work with a man with AIDS, and nearly one half . . . would avoid a neighborhood grocery store if the owner had AIDS." (Citation omitted.) *Doe* v. *Marselle*, supra, 236 Conn. 858 n.14.

The defendant claims that, because certain drugs are connected with the treatment of conditions that are

secondary to AIDS, disclosure of the billing information would violate the statute. The trial court order addressed just that concern by allowing the defendant to redact certain information: "[S]hould any documents [the defendant] is required to disclose pursuant to Request for Production Number 2 contain specific references to a person's physical or mental condition, such references may be redacted prior to such documents being produced."

We are cognizant of the legislature's concerns and are sensitive to the social ills that fall upon AIDS and HIV positive patients. Because the trial court's order allowed for redaction, our decision affirming that order will not broaden the scope of nonconfidential information. Nor will this conclusion cause the purpose of § 19a-583 to be eroded by case law. The trial court's order adequately protects the confidentiality rights of AIDS and HIV positive patients under § 19a-583.[5]

### III

Finally, the defendant claims that its due process rights under the state and federal constitutions were violated because the commissioner lacked probable

---

[5] The defendant claimed at oral argument that the privacy rights of patients in general would not be protected because the commissioner is required by § 42-110d (f) to make public "all records concerning the investigation of any alleged violation" within eighteen months of the date of the filing of the initial complaint. Because General Statutes § 1-19 (a) requires the commissioner to make available its public documents to those who want to examine them, the defendant claims that there is no way for the commissioner to guarantee the customers' privacy. We are not persuaded.

General Statutes (Rev. to 1997) § 1-19 (b) provides in relevant part: "Nothing in [section] . . . 1-19 . . . shall be construed to require disclosure of . . . (2) personnel or medical files *and similar files* the disclosure of which would constitute an invasion of personal privacy . . . ." (Emphasis added.) As we have noted, the trial court appropriately allowed the defendant to redact any information regarding a customer's physical or mental condition. Given the trial court's redaction order, it is clear that any information that the defendant possesses pertaining to one of its customers' physical or mental condition is not discoverable under §§ 42-110d (f) or 1-19 (b) (2).

cause to issue the civil investigative demand. Because the defendant did not provide an adequate record we decline to review this issue.

"It is the responsibility of the appellant to provide an adequate record for review as provided in Section 61-10." Practice Book § 60-5. We have frequently declined to review cases where an adequate record for review is lacking. *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 609, 710 A.2d 190 (1998). "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely speculative." (Internal quotation marks omitted.) Id., 608–609.

In the present case, while both parties briefed the issue of whether the commissioner was required to have probable cause to issue the investigative demand, the issue was not addressed in the trial court's memorandum of decision. The defendant failed to file a motion for articulation pursuant to Practice Book § 66-5. Because we have not been provided with the trial court's decision on this issue, we cannot reach the issue of whether the defendant was denied its right to due process.[6]

The order of the trial court is affirmed.

In this opinion the other judges concurred.

---

[6] We note, however, that § 42-110d does not require the commissioner to have probable cause to believe that a party is engaged in unfair or deceptive trade practices. The statutory language is clear and unambiguous. The commissioner may issue an investigative demand on "any person suspected of using, having used or about to use any method, act or practice declared by section 42-110b to be unlawful . . . ." General Statutes § 42-110d (c). "If

the language of a statute is plain and unambiguous, we need look no further than the words actually used because we assume that the language expresses the legislature's intent." (Internal quotation marks omitted.) *Hutchinson* v. *Andover*, 49 Conn. App. 781, 785, 715 A.2d 831 (1998).

The legislature has used the phrase "probable cause" in many different statutes. The legislature, therefore, is presumed to be aware of its meaning. Because the legislature did not use "probable cause" and, instead, chose "suspected," it is apparent that the legislature did not intend to require the commissioner to have probable cause before issuing a civil investigative demand.