[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO STRIKE #109
Before the court is the cross claimant Fleet Bank's motion to strike the cross claim defendant Hudson United Bank's special defenses.
On February 19, 2002, the plaintiff, David Higgins, filed a three-count complaint against the defendants, Fleet Bank Connecticut, N.A., now known as Fleet National Bank (Fleet), Hudson United Bank (Hudson), and Alberto V. Zappala, an attorney. The complaint alleges that Higgins retained Zappala to represent him in a personal injury action, and that Zappala negotiated a settlement of Higgins' personal injury claim. Higgins allegedly had no knowledge of the settlement. Zappala then cashed the settlement check, which was drawn on a Fleet account in the amount of $16,000 and made payable to "David Higgins and his attorney Alberto Zappala, Esquire," at Hudson. Hudson credited Zappala's account with $16,000 and obtained payment from Fleet.
On July 24, 2002, Fleet filed a one-count cross claim against Hudson, alleging that Zappala had forged Higgins' signature on the settlement check and that Hudson had thereby breached its transfer warranty under General Statutes § 42a-4-207 that all signatures on the check were authentic and authorized. The cross claim further alleges that Fleet provided Hudson with the affidavit of Higgins, in which Higgins had attested that the signature on the check was not his. Within thirty days, Fleet made a claim to Hudson for reimbursement of the face value of the check. Hudson denied Fleet's claim nine days later.
Hudson filed an answer and three special defenses to the cross claim on September 27, 2002, denying that it had breached any transfer warranties it owed to Fleet. The first special defense alleges that Higgins failed to mitigate his damages; the second special defense alleges that Hudson acted in accordance with customary and reasonable banking practices; and the third special defense alleges that the signature in question was authorized because Zappala was Higgins' agent by virtue of their retainer CT Page 3798 agreement.
On October 23, 2002, Fleet filed a motion to strike Hudson's special defenses on the ground that Fleet's status as both a holder in due course and a transferee bank immunizes it against the special defenses. As required by Practice Book § 10-42, Fleet has filed a memorandum in support of its motion to strike, and Hudson has filed a timely memorandum in opposition.
 DISCUSSION
"A motion to strike challenges the legal sufficiency of a pleading . . ." Vacco v. Microsoft Corp., 260 Conn. 59, 64-65, 793 A.2d 1048 (2002). "A motion to strike is the proper vehicle by which to contest the legal sufficiency of any special defense contained in an answer to the complaint." Doran v. Waterbury Parking Authority, 35 Conn. Sup. 280,281, 408 A.2d 277 (1979); see also Great Country Bank v. Pastore,241 Conn. 423, 434, 696 A.2d 1254 (1997) (affirming trial court's granting of plaintiff's motion to strike defendant's special defenses contained in the answer). "[G]rounds other than those specified [in the motion] should not be considered by the trial court in passing upon a motion to strike . . ." (Internal quotation marks omitted.) Gazo v.Stamford, 255 Conn. 245, 259, 765 A.2d 505 (2001). "The court is limited to a consideration of the facts alleged in the [pleadings]. A `speaking' motion to strike (one imparting facts outside the pleadings) will not be granted." (Internal quotation marks omitted.) Doe One v. Oliver,46 Conn. Sup. 406, 409, 755 A.2d 1000 (2000), aff'd, 68 Conn. App. 902,792 A.2d 911, cert. denied, 260 Conn. 911, 796 A.2d 556 (2002).
Fleet moves to strike Hudson's special defenses on the grounds that (1) it is a holder in due course and (2) it is a transferee bank to whom the transfer warranties under § 42a-4-207 may not be disclaimed. In support of the motion, Fleet argues that as a holder in due course, its rights are not subject to any defenses except infancy or insolvency of the obligor, duress, or fraud. Fleet also maintains that as a transferor bank, Hudson warrantied under § 42a-4-207 that all signatures on the check were authentic and authorized. Furthermore, Fleet notes that §42a-4-207 expressly provides that such a warranty may not be disclaimed with respect to checks.
Hudson counters that because Higgins and Zappala had signed a retainer agreement, Zappala, "as the attorney in fact for [Higgins], had the apparent authority in view of disinterested third parties to administer the plaintiff's civil action and further had the apparent authority to endorse settlement checks related to the plaintiff's civil action on CT Page 3799 behalf of his principal . . ." (Hudson's Memorandum in Opposition to Fleet's Motion to Strike, p. 5.) Hudson urges the court to "recognize that it would be unduly burdensome on the banking and legal professions to require attorneys to bring their clients with them to the bank to verify endorsements on negotiable instruments when the very nature of an attorney is to represent on behalf of his clients." (Hudson's Memorandum, p. 6.) Finally, Hudson contends that "§ 42a-4-207 fails to contemplate a fiduciary situation such as a rogue attorney who maintains his commercial and client accounts with a depository bank representing that the co-endorsement of his client is authorized and authentic." (Hudson's Memorandum, p. 6.)
"`[H]older in due course' means the holder of an instrument if: (1) [t]he instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and (2) [t]he holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any [possessory] claim to the instrument . . . and (vi) without notice that any party has a defense or claim in recoupment . . ." General Statutes § 42a-3-302 (a). A holder in due course takes the instrument subject only to "[a] defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings . . ." General Statutes § 42a-3-305. "[T]he party claiming the rights of a holder in due course bears the burden of proving all elements of that classification." Connecticut National Bank v. Giacomi,242 Conn. 17, 73, 699 A.2d 101 (1997).
In the present case, the pleadings fail to allege facts that, if true, would prove all the elements necessary for Fleet's classification as a holder in due course. As noted above, a court deciding a motion to strike is limited "to a consideration of the facts alleged in the complaint. A `speaking' motion to strike (one imparting facts outside the pleadings) will not be granted." Doe v. Marselle, 38 Conn. App. 360, 364, 660 A.2d 871
(1995), rev'd on other grounds, 236 Conn. 845, 675 A.2d 835 (1996). "Where the legal grounds for [a motion to strike] are dependent upon underlying facts not alleged in the [opposing party's] pleadings, the CT Page 3800 [moving party] must await the evidence which may be adduced at trial, and the motion should be denied." Liljedahl Bros., Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990).
Here, Fleet's first legal ground for its motion to strike — its purported status as a holder in due course — is dependent upon underlying facts needed to prove the element of good faith." `Good faith' means honesty in fact in the conduct or transaction concerned." General Statutes § 42a-1-201 (19). Fleet's bald assertion in its memorandum of law that "it is . . . clear that Fleet would not have accepted the check presented by [Hudson], had Fleet not been acting in good faith"; (Fleet's Memorandum in Support of its Motion to Strike, p. 4); assumes facts that are not alleged anywhere in the pleadings — specifically, facts that would show Fleet's "honesty in fact in the conduct or transaction concerned." General Statutes § 42a-1-201
(19). It is apparent that Fleet's "characterization in its memorandum . . . of itself as a `holder in due course . . . [is] based upon facts which are not alleged in the pleadings . . . Because [Fleet's argument] that the special defense[s] [are not] valid defense[s] under General Statutes § 42a-3-305 . . . [relies] on facts outside of the pleadings, [Fleet's] motion to strike the special defense[s] on [this ground] is improperly `speaking.'" Union Trust Co. v. Cuff, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 91 0503489 (January 26, 1993, Hennessey, J.).
Moreover, Fleet's reliance on the transfer warranties that Hudson purportedly breached under § 42a-4-207 is also dependent upon facts that, if proven, would show that Fleet acted in good faith in accepting the check presented by Hudson. Pursuant to § 42a-4-207, only "[a] person to whom the [transfer warranties] are made and who took the item ingood faith may recover from the warrantor as damages for breach of warranty an amount equal to the loss suffered as a result of the breach, but not more than the amount of the item plus expenses and loss of interest incurred as a result of the breach." (Emphasis added.) General Statutes § 42a-4-207 (c). Because Fleet may not recover damages from Hudson unless it acted in good faith, and because Fleet fails to point to any facts in the pleadings that, if true, would prove its good faith, Fleet's motion to strike is improperly "speaking" with respect to its argument under the transfer warranties as well.
For the foregoing reasons, Fleet's motion to strike is denied.
Skolnick, J. CT Page 3801