SARAH ZIRINSKY *v.* BRUCE ZIRINSKY
(AC 23558)
(AC 24289)

Schaller, Bishop and Berdon, Js.

Argued September 9, 2004—officially released February 8, 2005

*Eric R. Posmantier*, with whom, on the brief, was *Andrew P. Nemiroff*, for the appellant (defendant).

*Mark R. Soboslai*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. These two appeals arise from post-judgment orders by the trial court. The defendant, Bruce Zirinsky, appeals from certain postdissolution orders of the court, all of which essentially denied his request

for modification of an agreement between the parties with respect to the payment of child support. In both appeals, the defendant claims that the court improperly (1) permitted the plaintiff, Sarah Zirinsky,[1] to use a motion to strike to attack the legal sufficiency of post-judgment motions, (2) considered facts outside the pleadings when ruling on the plaintiff's motions to strike and (3) granted the motions to strike. We reverse the orders of the court.

A detailed recitation of the facts and procedural history is necessary for the resolution of these appeals. The defendant and the plaintiff were married in New York on October 26, 1979. They have four children of the marriage, the oldest born in 1984 and the youngest born in 1987. The marriage was dissolved by the court on June 16, 1999. Incorporated into the dissolution judgment was an extensive written agreement.

The agreement, a twenty-four page document, provided that the parties would share joint legal custody of the four children, who would reside primarily with the plaintiff. The defendant was required to pay any costs or expenses associated with his visitation rights and was ineligible to receive any deduction from his payment obligation to the plaintiff. The agreement provided that the defendant was to pay a base amount of unallocated alimony and support of $21,000 per month.[2]

Paragraph 3.16 (a) of the agreement provided that the alimony orders[3] were subject to modification pursu-

---

[1] The plaintiff is currently known as Sarah Greenwood.

[2] The parties included a detailed, comprehensive payment schedule of additional alimony payments in the event that the defendant's income reached certain amounts. A recitation of those calculations is not necessary to resolve the appeal; it is sufficient to note that the defendant was required to pay monthly, unallocated alimony to the plaintiff.

[3] Paragraph 3.24 provides in relevant part that " '[a]limony' . . . shall mean unallocated alimony and support if one or more [of the] minor children is living with the [plaintiff] or alimony only, if not. So long as the [defendant] is making payments . . . the [plaintiff] shall not seek payment of child support."

ant to General Statutes § 46b-86, except that the plaintiff was precluded from claiming additional alimony in the event that the defendant's income exceeded $2.5 million. Paragraph 3.16 (a) also referenced paragraph 3.23 of the agreement, which provided in relevant part that the "children ceasing to principally reside with the [plaintiff] shall not be a substantial change in circumstances for purposes of [§ 46b-86] . . . ." The parties signed the agreement on June 15, 1999, and the court incorporated it into the judgment on June 16, 1999.

The defendant filed a postjudgment motion for modification in July, 2001.[4] The defendant alleged that one of the children was attending boarding school and, when not at school, resided exclusively with him. He further alleged that another of the minor children lived exclusively with him. Finally, he claimed that during the period after judgment had been rendered and the filing of his motion, all of the children had spent substantial amounts of time in his home. The defendant referenced language in the agreement that the plaintiff "shall be responsible for support of the minor children" and on the basis of the aforementioned change in circumstances, he was entitled to received support payments for the children who lived with him.

On September 27, 2001, the plaintiff filed a motion to dismiss the defendant's motion for modification,

---

[4] The defendant labeled his motion a "motion for child support." In the court's memorandum of decision that was filed after the granting of the defendant's motion for articulation of the court's ruling granting the plaintiff's motion to strike the motion for child support, the court stated that the defendant's "filing of a motion seeking child support from the [plaintiff] is, in essence, a motion for modification, the net result of which, if granted, would be a shifting of his legal burden and a reduction in the moneys available to the [plaintiff]." The court then proceeded to analyze the practical effect of the motion, rather than the label attached by the party. See *In re Haley B.*, 262 Conn. 406, 412–13, 815 A.2d 113 (2003). At oral argument before this court, the defendant conceded that the court treated his motion for child support as a motion for modification and, thus, we will identify it as such.

which the court denied. The plaintiff, pursuant to Practice Book § 25-16, subsequently filed on September 12, 2002, a motion to strike the defendant's motion for modification. She argued that the express terms of the agreement stated that the children's change of residence was not a ground for modification and therefore the defendant's motion was legally insufficient.

The court held a hearing on the plaintiff's motion on September 30, 2002. At the conclusion of that hearing, the court granted the plaintiff's motion. On October 8, 2002, the defendant filed the appeal designated AC 23558, and on October 24, 2002, he filed a motion for articulation of the court's decision. On December 30, 2002, the court filed a written memorandum of decision articulating its prior oral order. The court determined that the parties clearly and unambiguously provided that if some or all of the children ceased to reside with the plaintiff, it would not constitute a substantial change in circumstances warranting modification. The court concluded, therefore, that the defendant's motion for modification, which was based solely on the changed residence of the minor children, was legally insufficient. Neither party moved for judgment and, as a result, the court did not render judgment following the granting of the plaintiff's motion to strike.

On October 25, 2002, after the appeal designated AC 23558 had been filed, the defendant filed a postjudgment motion for contempt. In the motion, he again alleged that the plaintiff had failed to provide child support and wilfully disregarded the judgment of the court requiring her to pay support for the minor children. The defendant requested in relevant part that "(1) the plaintiff be found in contempt for her failure to pay for the reasonable support of her children as specifically required pursuant to paragraph 3.21 of the . . . [a]greement; (2) the plaintiff be ordered to reimburse the defendant for the reasonable payments made by him for the support for the

children; (3) the plaintiff be ordered to pay for the reasonable monthly support for those minor children that continue to reside with the defendant; and (4) the court enter such other and further relief that it deems just and proper."

Simultaneous with the filing of the motion for contempt, the defendant filed a postjudgment motion for an order pertaining to child support. He again alleged that the plaintiff had failed to pay the support for the children. He requested that the court order the plaintiff to reimburse him for payments made to support the minor children living with him and to pay reasonable monthly support for those children.

On December 26, 2002, the plaintiff filed a motion to strike or to dismiss the defendant's motions for contempt and for an order. The court issued its memorandum of decision on April 28, 2003. The court, at the outset, stated that the defendant was "testing the same provisions" of the agreement that he had challenged with the prior motion for modification. The court struck the defendant's motion for an order on the same basis that it had granted the motion to strike the defendant's motion for modification. As to the motion for contempt, the court struck only paragraphs two and three of the relief sought by the defendant, sustained the objection to the motion to strike with respect to paragraphs one and four and noted that an evidentiary hearing was required. Again, because neither party moved for judgment after the court granted the plaintiff's motion to strike, the court did not render judgment. The defendant filed an appeal on May 14, 2003, designated AC 24289, from the partial granting of the motion to strike.

I

AC 23558

We first address the appeal designated AC 23558. Before considering the merits of the issues framed by

the parties, we must first determine whether the appeal has been brought from a final judgment.[5] Second, we address the waiver issue raised by the plaintiff. Only if we conclude that an appealable final judgment exists and that the defendant did not waive his rights to appeal will we reach the merits of the appeal.

### A

"We begin with established jurisdictional principles that guide, and indeed control, whether an order is appealable. Appellate jurisdiction is limited, with few statutory exceptions not pertinent to this case, to appeals from final judgments. See General Statutes §§ 51-197a, 51-199 and 52-263; see also Practice Book § 4000 [now § 61-1]. Consequently, interlocutory appeals must be dismissed. The difficulty comes not with the rule, but, rather, with its application. To help evaluate whether an otherwise interlocutory order is nonetheless final for purposes of appeal, we have in recent years relied on the standard set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), which permits the immediate appealability of an order 'in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them.' " *Taff* v. *Bettcher*, 243 Conn. 380, 384–85, 703 A.2d 759 (1997). Furthermore, "[b]ecause [appellate] jurisdiction over appeals, both criminal and civil, is prescribed by statute, [appellate courts] must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Internal quotation marks omitted.) *Ahneman* v. *Ahneman*, 243 Conn. 471, 478–79, 706 A.2d 960 (1998).

With respect to the appeal designated AC 23558, the court granted the plaintiff's motion to strike the motion

[5] We raised the concern sua sponte and instructed the parties to discuss the final judgment issue at oral argument.

for modification filed by the defendant. No judgment, however, was rendered following the decision. If this were a civil proceeding outside a postdissolution context, in which a motion to strike had been used to challenge the legal sufficiency of either a complaint, counterclaim or cross claim; see Practice Book § 10-39; the lack of a judgment would pose a serious, if not fatal, final judgment problem. "The granting of a motion to strike . . . ordinarily is not a final judgment because our rules of practice afford a party a right to amend deficient pleadings. See Practice Book § 10-44." *Egri* v. *Foisie*, 83 Conn. App. 243, 249, 848 A.2d 1266, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004); see also *Grier* v. *West Haven Police Dept.*, 8 Conn. App. 142, 143–44, 510 A.2d 1376 (1986) (party against whom motion to strike is granted must either replead within fifteen days or move for judgment in order to appeal.)

The present case involves a unique set of circumstances that warrants a rare departure from the general rule requiring the parties to file a motion for judgment and the court to render judgment following the granting of the motion to strike in order to appeal.[6] Our Supreme Court has stated that it "is well established that a ruling by a trial court regarding financial issues in a marital dissolution case . . . [including] a *ruling issued in conjunction with a final dissolution judgment or a decision regarding a postjudgment motion—is a final judgment for purposes of appeal.*" (Emphasis added.) *Ahneman* v. *Ahneman*, supra, 243 Conn. 479. The court further stated: "The trial court's decision not to consider the defendant's motions was the functional equivalent of a denial of those motions. Like a formal denial, the effect of the court's decision refusing to consider the

---

[6] We note that this departure from the general rule requiring the rendering of judgment following a motion to strike is particularly limited to the facts before us because we hold that a motion to strike is not the proper procedural vehicle to challenge the sufficiency of a postjudgment motion.

defendant's motions during the pendency of the appeal was to foreclose the possibility of relief from the court on those issues, unless and until the resolution of the appeal required further proceedings. Indeed, the refusal to consider a motion is more deserving of appellate review than a formal denial, because the defendant not only has been denied relief; she has been denied the opportunity even to persuade the trial court that she is entitled to that relief." Id., 480.

In the context of a postdissolution setting, in which the trial court granted a party's motion to strike a post-judgment motion, we conclude that under this limited factual setting, the rights of the parties were concluded. Moreover, the court, by granting the plaintiff's motion to strike, effectively rendered judgment by foreclosing the possibility of relief from the trial court as to the child support issues raised in the defendant's motion for modification. We are satisfied that an appealable final judgment is present. "Appealability depends on the nature of the ultimate right sought to be vindicated and the effect of the trial court's decision on the vindication of this right." (Internal quotation marks omitted.) *Sharon Motor Lodge, Inc.* v. *Tai*, 82 Conn. App. 148, 155, 842 A.2d 1140, cert. denied, 269 Conn. 908, 852 A.2d 738 (2004). We emphasize that this decision is limited strictly to the facts presented and does not signify any change or departure from the general rule requiring the rendering of judgment in order to appeal following the granting of a motion to strike.[7]

---

[7] Practice Book § 61-2 provides in relevant part that a *"judgment* on the granting of a motion to strike pursuant to Section 10-44 . . . shall constitute a final judgment. . . ." (Emphasis added.) Practice Book § 61-2 is consistent with prior appellate decisions regarding the nonappealability of the granting of a motion to strike when the trial court has not yet rendered judgment on the stricken pleading. Cf. *Norwich* v. *Silverberg,* 200 Conn. 367, 369 n.3, 511 A.2d 336 (1986); *Breen* v. *Phelps,* 186 Conn. 86, 89, 439 A.2d 1066 (1982). Because we conclude that a motion to strike cannot be used to challenge a motion to modify child support, the requirement of Practice Book § 61-2 is not applicable here.

B

Having concluded that a final judgment exists, we turn to the plaintiff's claim that the defendant waived any right to appeal from the decision with respect to his motion for modification by subsequently filing a motion for contempt and a motion for an order pertaining to child support. The plaintiff relies on the general rule that "[t]he filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading." (Internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 74, 700 A.2d 655 (1997).

"After a trial court has sustained a motion to strike a complaint or a portion of the complaint, the plaintiff has two options. . . . The plaintiff may either amend his pleading, or he may stand on his original pleading, allow judgment to be rendered against him, and appeal the sustaining of the [motion to strike]. . . . The choices are mutually exclusive. The filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading. . . . When a [motion to strike] is sustained and the pleading to which it was directed is amended, that amendment acts to remove the original pleading and the [motion to strike] thereto from the case. The filing of the amended pleading is a withdrawal of the original pleading." (Citation omitted; internal quotation marks omitted.) *Lawson* v. *Aetna Life Ins. Co.*, 59 Conn. App. 84, 90, 755 A.2d 351 (2000).

At the outset, we note that "[a]n interpretation of the pleadings in the underlying action . . . presents a question of law and is subject to de novo review on appeal." (Internal quotation marks omitted.) *Breiter* v. *Breiter*, 80 Conn. App. 332, 335, 835 A.2d 111 (2003).

As we previously have stated, the present case presents an unusual procedural setting, as all of the relevant motions occurred in a postdissolution context. The defendant did not file an amended pleading after the court struck his motion for modification. He filed two new motions on October 25, 2002. We conclude that the general rule that the filing of an amended pleading operates as a waiver to any appeal with respect to the original pleading simply does not apply under these unique facts and circumstances. Although all three of the defendant's motions touch on the issue of child support, we believe that the two October 25, 2002 motions, which seek reimbursement from the plaintiff, and "other and further relief that [the court] deems just and proper," are sufficiently distinct from the motion for modification filed on June 9, 2001. The motions for contempt and for an order, therefore, do not constitute amended motions for modification.[8] As a result, the defendant did not waive his right to appeal from the court's order to strike the motion for modification.

## C

We now examine the issues raised by the defendant in his appeal. The defendant claims that the court improperly (1) permitted the plaintiff to use a motion to strike to attack the legal sufficiency of a postjudgment motion, (2) considered facts outside the pleadings when ruling on the plaintiff's motion to strike and (3) granted the motion to strike. We agree with the defendant on his first claim.[9]

---

[8] Although we need not resolve that issue, it is unclear whether this general rule even applies to motions rather than to amended pleadings.

[9] Because we conclude that a motion to strike is not a proper procedural vehicle to challenge the legal sufficiency of a postjudgment motion, we need not address the remaining issues raised by the defendant. We note, however, that even if we were to conclude that a motion to strike were proper in the postjudgment context, it would have been improper for the court to grant such a motion in this case. It is well established that a motion to strike must be considered within the confines of the pleadings and not external documents, such as the agreement between the parties. "We are limited,

As a preliminary matter, we identify the appropriate standard of review. The defendant claims that the use of a motion to strike is not authorized by our rules of practice to challenge the legal sufficiency of a postjudgment motion. He argues that, on the basis of the language set forth in Practice Book §§ 10-39 and 25-16, motions to strike are limited to challenging one or more counts found in complaints, cross complaints and counterclaims. We are required to interpret the scope of those rules of practice; accordingly, we are presented with a question of law over which our review is plenary. See *In re Samantha C.*, 268 Conn. 614, 638, 847 A.2d 883 (2004). In doing so, we are mindful that "[t]he rules of statutory construction apply with equal force to Practice Book rules." (Internal quotation marks omitted.) *Johnson* v. *Atlantic Health Services, P.C.*, 83 Conn. App. 268, 276, 849 A.2d 853 (2004); see also *State* v. *Valedon*, 261 Conn. 381, 385, 802 A.2d 836 (2002).

In *Sheiman* v. *Sheiman*, 72 Conn. App. 193, 804 A.2d 983 (2002), the defendant father filed a motion to strike the plaintiff's postjudgment motion to modify custody. We agreed with the trial court that "a motion to strike does not apply to a motion to modify custody." Id., 200. We elaborated by stating that "Practice Book § 10-39 (a) provides that a party wanting to contest the legal sufficiency of a complaint, counterclaim, cross claim or any counts contained therein or a prayer for relief, the joining of two or more causes of action or the legal sufficiency of an answer may file a motion to strike. *A motion for modification of custody does not fall within the ambit of Practice Book § 10-39.*" (Emphasis added.) *Sheiman* v. *Sheiman*, supra, 200. We believe that the reasoning set forth in *Sheiman* with respect to a motion

---

however, to a consideration of the facts alleged in the complaint. A 'speaking' motion to strike (one imparting facts outside the pleadings) will not be granted." *Doe* v. *Marselle*, 38 Conn. App. 360, 364, 660 A.2d 871 (1995), rev'd on other grounds, 236 Conn. 845, 675 A.2d 835 (1996).

to modify custody applies equally to a motion to modify support.[10] Although *Sheiman* controls the issue, we believe it appropriate to explain further our reasoning.

The appropriate starting point is the language used in the relevant rules of practice. See *Mariculture Products Ltd.* v. *Certain Underwriters at Lloyd's of London*, 84 Conn. App. 688, 698, 854 A.2d 1100, cert. denied, 272 Conn. 905, 863 A.2d 698 (2004). Practice Book § 25-16 (a) provides in relevant part that "[w]henever any party wishes to contest (1) the legal sufficiency of the allegations of any *complaint or cross complaint*, or of any one or more counts thereof, to state a claim upon which relief can be granted, or (2) the legal sufficiency of any *claim for relief in any such complaint or cross complaint* . . . that party may do so by filing a motion to strike the contested pleading or part thereof." (Emphasis added.) The inclusion of the term "counterclaim" is the only appreciable difference found in Practice Book § 10-39.[11]

The motion to strike filed by the plaintiff was directed at the defendant's postjudgment motion for modification. Neither Practice Book § 25-16 nor Practice Book § 10-39 mentions motions of any type. This case calls to mind the "tenet of statutory construction known as expressio unius est exclusio alterius, translated as the expression of one thing is the exclusion of another . . . ." (Citation omitted; internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn.

---

[10] The plaintiff argues that *Sheiman* is distinguishable from the present case because the motion in that case concerned custody while the motion in the present case focused on financial issues. To be sure, in the appropriate context, such as modification of a settlement agreement, that can be a crucial distinction. We do not, however, read *Sheiman* to turn on the fact that it was a motion for modification of custody. We therefore reject the plaintiff's attempt to distinguish *Sheiman* from the present case.

[11] Both Practice Book §§ 10-39 and 25-16 also permit the use of a motion to strike with respect to an answer or special defense. That fact is of no consequence to the present case.

279, 295, 819 A.2d 260 (2003). Thus, "[a] statute which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing in any other way." (Internal quotation marks omitted.) *Iovieno* v. *Commissioner of Correction*, 222 Conn. 254, 258, 608 A.2d 1174 (1992). The language used in Practice Book §§ 10-39 and 25-16 specifically addresses certain identified pleadings, complaints, counterclaims and cross claims and, therefore, does not apply to motions.

In further support of our conclusion, we note that the motions filed by the defendant are addressed in a different section of our rules of practice. Practice Book § 25-24, titled "Motions," provides in relevant part that "[a]ny appropriate party may move for alimony, child support, custody, visitation, appointment of counsel for the minor child, counsel fees, or for an order with respect to the maintenance of the family or for any other equitable relief." Practice Book § 25-24 (a). Other motions specifically mentioned in chapter 25 of the rules of practice include motions for exclusive possession,[12] for modification of custody, alimony or support[13] and for contempt.[14] The use of those motions in family proceedings, therefore, is separate and distinct from the use of a motion to strike under Practice Book § 25-16.

Finally, we note that a motion to strike is essentially a procedural motion that focuses solely on the pleadings. "Because the issues concern the granting of a motion to strike, we are limited to and must accept as true the facts alleged in the plaintiffs' amended complaint . . . ." *Craig* v. *Driscoll*, 64 Conn. App. 699, 702, 781 A.2d 440 (2001), aff'd, 262 Conn. 312, 813 A.2d 1003 (2003). It is, therefore, improper for the court to con-

---

[12] See Practice Book § 25-25.
[13] See Practice Book § 25-26.
[14] See Practice Book § 25-27.

sider material outside of the pleading that is being challenged by the motion. See *Doe* v. *Marselle*, 38 Conn. App. 360, 364, 660 A.2d 871 (1995), rev'd on other grounds, 236 Conn. 845, 675 A.2d 835 (1996). The defendant, however, filed a motion to modify child support and, therefore, the parties were under an affirmative obligation to submit certain sworn statements concerning income, expenses, assets and liabilities, as well as a child support guidelines worksheet. See Practice Book § 25-30. Such additional evidence would not be proper when resolving a motion to strike. To allow a motion to strike to be used in this case would result in a direct conflict with another section of our rules of practice.

We are mindful of the admonition against favoring form over substance. See *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 34, 848 A.2d 418 (2004).[15] This court, however, has found reversible error when the rules of practice have not

---

[15] We point out that in reaching our decision, we express no opinion as to the merits of the defendant's motions. Furthermore, the question of whether a motion to strike postjudgment motions *should be* a viable procedural option to a party presented with a motion that very well may be legally insufficient is separate and distinct from whether *it is available* under the current rules of practice. We are aware that several decisions of the Superior Court have permitted the use of a motion to strike with respect to postjudgment motions. See *Neway* v. *Bogner*, Superior Court, judicial district of Fairfield, Docket No. 348109 (January 3, 2003) (33 Conn. L. Rptr. 648); *Foster* v. *Foster*, Superior Court, judicial district of New London, Docket No. 558204 (August 19, 2002) (33 Conn. L. Rptr. 24); *Hillis* v. *Hillis*, Superior Court, judicial district of Stamford-Norwalk, Docket No. 179465 (July 17, 2001); *Smith* v. *Smith*, Superior Court, judicial district of Stamford-Norwalk, Docket No. 164966 (April 12, 2001) (29 Conn. L. Rptr. 536); but see *Robinson* v. *Gwozdz*, Superior Court, judicial district of Hartford, Docket No. 619118 (February 22, 2001) ("the court agrees with the defendant that the state's motion to strike is a particularly inappropriate vehicle with which to raise the issue. Motions to strike are provided in Practice Book § 10-39, and, in family cases, the nearly identical Practice Book § 25-16. The rule appears to provide a method to contest a complaint, cross complaint or answer. It is not apparent that is an appropriate response to a motion."). It is not for us, however, to rewrite the rules of practice in effort to favor practicality over process.

been followed. See, e.g., *Heim* v. *California Federal Bank*, 78 Conn. App. 351, 828 A.2d 129, cert. denied, 266 Conn. 911, 832 A.2d 70 (2003). In that case, we stated that "[p]leadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them. . . . Our rules of practice contain provisions for the framing of issues. . . . Given what may be the legal consequence to a party against whom such a motion is granted, the movants should be required to follow our rules of practice, especially as to the party or parties against whom it is directed." (Citations omitted; internal quotation marks omitted.) Id., 363. Additionally, "[w]e are mindful that it is a fundamental tenet of due process that persons directly concerned with the result of an adjudication be given reasonable notice and the opportunity to present their claims or defenses. . . . This case calls to mind the admonition that [e]*ither we adhere to the rules [of practice] or we do not adhere to them.*" (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 364.

In the present case, by granting the plaintiff's motion to strike the defendant's postjudgment motion for modification, the rules of practice were not followed. Accordingly, we determine that the court improperly granted the plaintiff's motion to strike the defendant's postjudgment motion for modification.

## II

### AC 24289

We now turn to the appeal designated AC 24289. Again, before we can reach the merits of the appeal, we must determine whether there is an appealable final judgment. If a final judgment exists, we will address the questions raised by the defendant concerning the

propriety of the use of a motion to strike his postjudgment motions for contempt and for an order.

## A

As we noted in part I A, the existence of an appealable final judgment is a jurisdictional prerequisite for this court. This appeal presents two final judgment questions: First, does a final judgment exist when the trial court strikes a postjudgment motion for an order, but does not render judgment accordingly? Second, does a final judgment exist when the trial court strikes two of the four requests for relief in a postjudgment motion for contempt and requires an evidentiary hearing on the remaining two requests? We resolve the first question by applying the reasoning and rationale set forth in part I A and conclude that under these unique facts and circumstances, the court's decision to strike the defendant's postjudgment motion for an order constituted an appealable final judgment, even in the absence of the rendering of judgment.

We now turn to the second question, that is, whether the court's decision to grant the plaintiff's motion to strike with respect to two claims for relief and to deny the motion with respect to the remaining claims for relief qualifies as an appealable final judgment. At this point, it is useful to restate precisely what relief the defendant sought to obtain in his motion for contempt. The defendant's motion requested that "(1) the plaintiff be found in contempt for her failure to pay for the reasonable support of her children as specifically required pursuant to paragraph 3.21 of the Separation Agreement; (2) the plaintiff be ordered to reimburse the defendant for the reasonable payments made by him for the support of the children; (3) the plaintiff be ordered to pay for the reasonable monthly support for those minor children that continue to reside with the

defendant; and (4) the court enter such other and further relief that it deems just and proper."

The court stated in its memorandum of decision that because the defendant had sufficiently pleaded the basic elements of contempt, the court was required to conduct an evidentiary hearing. It further stated that "the court has the power to enter appropriate orders so as to either preserve the integrity of the original order . . . or to make one party whole due to the breach by the other party." (Citation omitted.) It is readily apparent that the court contemplated further proceedings as to the motion and did not render judgment. The court's ruling on the motion falls into the gray area between a final judgment and a nonappealable interlocutory order in which a *Curcio* analysis is required. See *Bryant* v. *Bryant*, 228 Conn. 630, 635, 637 A.2d 1111 (1994).

The first prong of the *Curcio* test requires the termination of a separate and distinct proceedings. Id. We believe that the court, in striking two portions of the defendant's contempt motion, did not terminate a separate and distinct proceeding. "The first prong of the *Curcio* test requires the order being appealed to be severable from the central cause to which it is related so that the main action can proceed independent of the ancillary proceeding." (Internal quotation marks omitted.) *Rocque* v. *Sound Mfg., Inc.*, 76 Conn. App. 130, 133, 818 A.2d 884, cert. denied, 263 Conn. 927, 823 A.2d 1217 (2003). The striking of two claims for relief is not sufficiently severable from the overall contempt motion that would warrant an immediate review by this court.

The court's decision to strike two claims for relief in the contempt motion also fails to satisfy the second *Curcio* prong, which provides that the order is appealable immediately if it so concluded the rights of the parties that further proceedings cannot affect them. See *Ragin* v. *Lee*, 78 Conn. App. 848, 856, 829 A.2d 93 (2003).

"The second prong of the two part test for finality under *Curcio* focuses on the nature of the right at issue. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [party] irreparably harmed unless they may immediately appeal. . . . Accordingly, the [appellant] must do more than show that the trial court's decision threatens him with irreparable harm. The [appellant] must show that that decision threatens to abrogate a right that he or she *then* holds." (Emphasis in original; internal quotation marks omitted.) *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 751–52, 830 A.2d 711 (2003).

We do not believe that the court's striking of two of the claims in the contempt motion caused the defendant an irretrievable loss or that he would be irreparably harmed. Once the court holds the evidentiary hearing and rules on the remaining claims for relief, the defendant may appeal from the decision of the court to refuse to hear certain of his claims for relief. At the present time, however, the pending issues set out in the contempt motion may affect the parties. Thus, we conclude that the portion of the appeal concerning the contempt motion must be dismissed for a lack of a final judgment.

B

The only remaining issue is whether the court improperly (1) permitted the plaintiff to use a motion to strike to attack the legal sufficiency of the postjudgment motion for an order, (2) considered facts outside the pleadings when ruling on the plaintiff's motion to strike and (3) granted the motion to strike. The same analysis that applied to our discussion in part I C with respect to the motion to strike the motion for modification results in the same conclusion with respect to the motion for an order. Without repeating that portion of

our decision, we note simply that a motion to strike is an improper procedural vehicle to challenge the legal sufficiency of a postjudgment motion for an order and reverse the court's decision.

In AC 23558, the judgment is reversed and the case is remanded for further proceedings in accordance with law. The appeal in AC 24289 is dismissed with respect to the striking, in part, of the defendant's motion for contempt; the judgment is reversed with respect to the striking of the defendant's motion for an order of child support and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.